WHITTAKER *v.* WATSON.

Opinion Delivered January 19, 1901.

1. ELECTION CONTEST—JURISDICTION.—Jurisdiction to hear and determine contests of elections for the office of mayor, not being vested elsewhere, is in the circuit court, under Const. 1874, art. 7, sec. 11. (Page 558.)

2. SAME—JOINDER OF PARTIES.—Under Sand. & H. Dig., ? 7366, providing that "whenever a person usurps an office or franchise to which he is not entitled by law, an action by proceedings at law may be instituted against him, either by the state or the party entitled to the office or franchise, to prevent the usurper from exercising the office or franchise," a joint action for the usurpation of an office may by maintained by the state and the party entitled to the office. (Page 558.)

3. VOTER—PAYMENT OF POLL TAX.—Payment of one's poll tax by another not by request but as a gift, in order to influence his vote, without any offer on the voter's part to reimburse the other for such payment, will not constitute him a competent voter, though otherwise qualified. (Page 558.)

Appeal from Jackson Circuit court.

RICHARD H. POWELL, Judge.

*Gustave Jones,* for appellant.

The state was not a proper party, and the demurrer for misjoinder should have been sustained. 54 Ark. 468. The filing of the bond required by Sand. & H. Dig., §§ 2702-3, was a prerequisite to the issuance of summons. 5 Ark. 457;

68 555
f69 511

68 555
73 192
73 194
75 458

68 555
f 84 551

68 555
f80 375
81 41
82 530

6 Ark. 408; 3 Ark. 501; 17 Ark. 286; 30 Ark. 359. The circuit court had no jurisdiction of a contest for a municipal office. *Cf.* Const. Ark., § 24, art. 19; 27 S. W. 123; 33 Col. 581.

*M. M. Stuckey, J. M. Stayton* and *Phillips & Campbell,* for appellees.

The circuit court had jurisdiction. 66 Ark. 201. Contests for municipal offices are not provided for expressly. *Cf.* Sand. & H. Dig., §§ 2693–2719. Hence the remedy is under the "usurpation act" (Sand. & H. Dig., Ch. 153), in lieu of the writs of *scire facias* and *quo warranto,* which would have been the remedy at common law. Const. Ark., art. 7, § 11; Paine, El. § 868; McCrary, El. § 369; 2 Dill, Mun. Corp. § 892; 6 Am. & Eng. Enc. Law, 386; 50 Ark. 266; 84 Am. Dec. 242. The circuit court's jurisdiction is broad enough to include the present case. 50 Ark. 271; 28 Ark. 451. The testimony of the tax collector was competent. 1 Greenleaf, Ev. § 436. There is no error in the court's declarations of law. The court's first declaration of law was correct. McCrary, Elections, §§ 369, 389, 381, 425; 66 Ark. 201. And so was the second. 6 Am. & Eng. Enc. Law, 352; Paine, Elections, § 513; 54 Ark. 409. Poll taxes cannot be paid by a candidate to procure the vote of the one for whom payment is made, so as to enable him to vote. 5 Met. 162. Suffrage is a grant from the state. 62 Am. St. 487; 29 Am. Rep. 591; 97 Am. Dec. 263. Such votes are void. 17 Am. Rep. 485; 36 *id.* 222; 20 *id.* 746; 37 *id.* 417. The burden was on appellant to prove his authority. 2 Dill. Mun. Corp. § 893; 1 Ark. 513; 3 Ark. 570; 27 Ark. 176; McCrary, El. § 459; 50 Ark. 85.

BATTLE, J. This action was instituted by the state of Arkansas and Thomas J. Watson against Franklin Whittaker, in the Jackson circuit court, to contest the election of the defendant to the office of mayor of the city of Newport, and to recover that office for Watson. They alleged in their complaint and the amendments thereof that Watson is a citizen of Newport, and a qualified elector; that at the election held at Newport on the fifth day of April, 1898, there were cast for the office of mayor of said city 507 votes; that Watson, Whit-

taker and Thomas Ward, being candidates for that office, received of said votes as follows: Watson, 216; Whittaker, 218; and Ward, 73; that Whittaker, having received the greatest number of votes, as shown by the returns, received the certificate of election; that Whittaker was not legally elected, because of the votes cast and counted for him forty-four were cast by persons who had not paid their poll tax and were not entitled to vote, eight were cast by persons who were non-residents of the city at the time of the election, and three by persons who had been convicted of larceny; that Watson received of said votes 216, which was the greatest number of legal votes cast for any one for the office of mayor at that election, and was duly elected; and that, notwithstanding this fact, Whittaker] has usurped the office, and excluded Watson therefrom. And plaintiffs asked that the election be inquired into, and that the legal votes be counted, and that Watson be declared elected, and that the defendant be ousted from the office, and for other relief.

The defendant answered, and denied that Watson was elected, and alleged that he was, and that Watson had received of the votes cast at the election fourteen which were cast by persons who had not paid their poll tax and were not qualified electors, twenty-eight of which were cast by non-residents of the city, and one cast by a person convicted of a felony.

After hearing the evidence, the court found, in part, as follows:

"1. That there was a regular election duly held in the city of Newport, Jackson county, Arkansas, on Tuesday, the 5th day of April, 1898, for the purpose of electing a mayor and other officers of said city * * * for the ensuing term of two years, and at said election Thomas J. Watson, Franklin Whittaker and T. T. Ward were candidates for mayor, * * * and were the only persons for whom votes were cast for the office of mayor.

"2. That the commissioners of election for Jackson county, on the returns made to them by the judges and clerks of said election, declared that Franklin Whittaker had received 218 votes for the office of mayor of the city of Newport, that T.

**J.** Watson had received 216 votes, *  *  * and T. T. Ward had received 73 votes. *  *  * And that said commissioners issued a certificate of election to said Franklin Whittaker. Whereupon he received a commission as mayor of said city, and thereupon assumed to exercise said office of mayor of said city, and was prior to and at the time of the institution of this proceeding, and is now, exercising said office." And it is further found that Whittaker received at said election for said office 156 legal votes and no more, and Watson 197—41 more than were received by the defendant, and 124 more than Ward; and rendered judgment in favor of Watson for the office; and the defendant appealed.

This action is based upon chapter 153 of Sandels & Hill's Digest, the object of which is to provide a remedy for usurpation of office or franchise. The statutes and laws of this state do not provide for the contests of elections for mayor in any manner except as provided in the chapter named. No other court being vested with the right to hear and determine such contests, the circuit court has jurisdiction to do so; and chapter 153 of Sand. & H. Dig. furnishes a remedy. *Lambert* v. *Gallagher*, 28 Ark. 451; *Payne* v. *Rittman*, 66 Ark. 201; McCrary, Elections (4th Ed.) 369; 2 Dillon, Municipal Corporations (4th Ed.) § 892.

Appellant insists that there was a misjoinder of parties plaintiff, because Sand. & H. Dig., § 7366, provides that "whenever a person usurps an office or franchise to which he is not entitled by law, an action by proceedings at law may be instituted against him, either by the state or the party entitled to the office or franchise, to prevent the usurper from exercising the office or franchise." While it authorizes either party to institute the action, there is nothing in it prohibiting both from doing so. Either being authorized to do so, we see no reason why both cannot join in bringing the action, or how the defendant can be prejudiced by such joinder.

Many persons voted for the appellant for mayor at the election in question who had not paid their poll taxes, or previously requested or subsequently undertaken to reimburse those who had done so. Other persons paid the tax for them,

and delivered to them a receipt of the collector showing that the tax had been paid. Upon exhibiting these receipts to the judges of the election, they were permitted to vote. Appellant contends that they had the right to vote, and their votes should be counted; and appellees insist that they should not be.

The constitution of this state declares that "every male citizen of the United States, or male person who has declared his intention of becoming a citizen of the same, of the age of twenty-one years, who has resided in the state twelve months, in the county six months, and in the precinct or ward one month, next preceding any election at which he may propose to vote, except such persons as may for the commission of some felony be deprived of the right to vote by law passed by the general assembly, and who shall exhibit a poll tax receipt or other evidence that he has paid his poll tax at the time of collecting taxes next preceding such election, shall be allowed to vote at any election in the state of Arkansas,"etc. Amdt. No. 2. The object of the requirement of the receipt or other evidence of the payment of the poll tax is to make the payment of the tax by the elector a condition upon which he shall be allowed to vote, and to prohibit him from voting until he does so. We conceive the object and intent of this provision of the constitution to be not only to induce the citizen to whom the right of suffrage is granted to contribute to the support of the common schools, for which the tax is levied, but to exclude from voting the citizen who does not take an interest in the welfare of his country or value his vote sufficiently to pay a poll tax. He, however, need not pay the tax in person, but may in good faith authorize another to pay it for him, or, if another has done so without having been previously authorized, he may adopt or ratify the act, but he must do so with a *bona fide* intent and promise to reimburse him. In this way only can the voter be secured in the free and untrammeled exercise of his right of suffrage. The acceptance of the payment of a poll tax as a gift tends to induce him to so vote as to please the partisan, candidate or other person, who paid the same for him. This is contrary to the spirit of the requirement of the

constitution.  *Contested Election of Harry White*, 4 Pa. Dist. Rep. 363, 372, 373; *Humphrey* v. *Kingman*, 5 Met. 162; McCrary on Elections (4th Ed.) §§ 109, 110:

In Pennsylvania the organic law declares:  "Every male citizen, if twenty-two years of age or upwards, who shall have paid a state or county tax which shall have been assessed at least two months, and paid at least one month before the election, shall be entitled to vote at all elections."  In speaking of this provision, the court, in *Contested Election of Harry White*, *supra*, said:  "The plain intent of the law is to secure the purity of the ballot and the freedom of the voter in his right of suffrage.  The voter is supposed to have either a defined political faith to which he adheres, or the candidate is possessed of qualifications which the voter admires, and, if permitted to have freedom in his choice, he will cast his ballot either in support of the principles of his political faith, or for the candidate or candidates whose qualifications for office he recognizes as superior.  Now, anything, either in payment of taxes for him or in any other way, which will induce the voter to cast his ballot contrary to his will, and his choice unchanged, is but a species of bribery, and cannot be tolerated by the law.  It may, by some, be said that there are voters who do not have any political faith or choice as to candidates. In reply to such, we say that if there are voters of this character, and they wish to exercise the right of suffrage, they should be encouraged to make a choice by political committees, partisans and candidates refraining from offering to them any inducement by paying their taxes, or in any other way, to secure their votes."  These remarks of the Pennsylvania court are appropriate in this case.

Excluding the votes of those persons who had not paid their poll taxes, as required by the constitution, and all other illegal ballots, and counting only the legal, we think the evidence shows that Watson was elected mayor; and that the judgment of the circuit court should be affirmed; and it is so ordered.