CRAIG v. SIMS.

Opinion delivered October 1, 1923.

1. ELECTIONS—PRIMARY ELECTION LAW CONSTRUED.—Crawford & Moses' Dig., § 3777, relating to primary elections, does not restrict the right of a voter in a primary election, but merely regulates the method of voting and the preservation of the evidence of the elector's right to vote.

2. ELECTIONS—RIGHT TO VOTE IN PRIMARY ELECTION.—When, in a primary election, a voter's name does not appear on the certified list of voters required to be furnished to the election judges by Crawford & Moses' Dig., § 3740, he must prove his qualifications as an elector in the manner required by the statute, so as to entitle him to vote; and, if he fails to do so, his ballot may be rejected, and, if, without such proof, he has been permitted to vote, his ballot may be rejected in a contest in the court.

3. ELECTIONS—CONSTRUCTION OF PRIMARY ELECTION LAW.—Crawford & Moses' Dig., § 3777, regulating primary elections, was mandatory because it both gave directions for conducting them and declared what the consequences of neglecting their observance should be.

4. ELECTIONS—PRIMARY ELECTION—CONTEST—BURDEN OF PROOF.— As the returns in a primary election are made by persons charged by the statute with the duty of receiving and canvassing the ballots and certifying the result, a presumption exists in favor of the due performance thereof, and the burden of overcoming such presumption is upon the contestant.

5. ELECTIONS—PRIMARY ELECTION CONTEST—INSTRUCTION.—In a contest of the declared result of a primary election, refusal of the court to make a declaration of law that it shall be ground for rejection of any ballot cast by a voter that his name does not appear upon the certified list of polltax payers or who has not filed with the judges of the election his poll-tax receipt or the affidavit of attainment of his majority in the form provided by the statute, is not prejudicial where there is neither allegation nor proof of any facts calling for such declaration.

6. ELECTIONS—PRIMARY ELECTION—CONSTITUTIONAL PROVISIONS.—
Art. 3, § 11, Cont., providing that "if the officers of any election
shall unlawfully refuse or fail to receive, count or return the vote or
ballot of any qualified elector, such vote or ballot shall neverthe-
less be counted upon the trial of any contest growing out of said
election," *held* not to apply to primary elections.

7. ELECTIONS—PERSONS ENTITLED TO VOTE IN PRIMARY ELECTION.—
Under Crawford & Moses' Dig., § 3780, providing that primary
elections "shall be conducted in conformity with this act and
the general election laws of the State," and § 3741, *Id.*, pro-
viding that any person liable to pay poll tax, and who has paid
the same at any time between the first Monday in January and
the Saturday next preceding the first Monday in July, shall be
"entitled to vote at any election held in this State at any time
before the first Monday in July of the year succeeding that in
which the payment is made," *held* that persons not paying their
poll tax within the dates named are not entitled to vote in a
primary election.

8. ELECTIONS—PRIMARY ELECTION CONTEST—EVIDENCE OF ILLEGAL
VOTING.—Proof that poll-tax receipts were illegally issued by
the county collector and purchased by the contestee or by other
persons for his benefit is insufficient to establish that illegal
votes were cast for the contestee.

Appeal from Prairie Circuit Court, Southern Dis-
trict; *George W. Clark,* Judge; affirmed.

*Brundidge & Neelly* and *Emmet Vaughan,* for appel-
lant.

The collector has no right to issue a poll-tax receipt
to any person not assessed for taxation as provided by
law, C. & M. Digest, § 3738; and the holder of such poll-
tax receipt is not entitled to vote in any election held in
this State. If such person votes, that vote should be
cast out.  61 Ark. 247; 68 Ark. 555; 69 Ark. 501; 97 Ark.
221. It is time for this court to declare in positive terms
that a poll-tax receipt held by a person who has not been
assessed, either by the assessor in apt time, or by the
clerk after the assessor's return, does not entitle the
holder thereof to be entered upon the list of qualified
electors. C. & M. Digest, § 3740.

*Geo. W. Emerson, Gregory & Holtzendorff* and
*Cooper Thweatt,* for appellee.

1. Election returns are *quasi* records, and will stand until overcome by affirmative evidence. 73 Ark. 188; 41 Ark. 111; 94 Ark. 478.

2. Even if the assessment of a poll-tax is necessary under the general election law, it is not necessary under the primary election law. Sections 3738, 3739, 3740, C. & M. Digest, are directory merely, and none of their provisions, when considered in connection with § 3841, purport to make the assessment of one's poll-tax a condition precedent to his right to vote. The last named section, which *is* mandatory, gives a voter the absolute right to vote upon *payment* of his poll-tax within the specified time. 20 Ark. 455; 34 Ark. 493; 69 Ark. 506. If the statutes providing for an assessment of the poll-tax, in addition to the payment thereof, are mandatory, they are unconstitutional. 24 Ark. 161.

HART, J. This was a statutory proceeding in the circuit court by Geo. W. Craig against J. F. Sims to contest the nomination of the latter for the office of county judge at the Democratic primary held on August 8, 1922, in Prairie County, Ark.

Craig, Sims and others were candidates for county judge of Prairie County in that primary election. The Democratic County Central Committee met to declare the result of the primary election after it was held, and J. F. Sims was declared to be nominated. Subsequently he was duly elected at the general election held in the same year.

As above stated, Craig brought this suit against Sims, under the statute, to oust him from office, on the ground that he had been illegally and fraudulently declared to be the nominee of the Democratic party for the office of county judge of Prairie County, when, in fact, Craig received the highest number of legal votes cast at the primary election, and was entitled to be declared the nominee.

After hearing the evidence adduced by both parties, the circuit court found the facts and declared the

law to be in favor of Sims. Judgment was accordingly rendered in his favor, and the complaint of Craig was dismissed.

To reverse that judgment Craig has duly prosecuted an appeal to this court.

The case was heard and determined in the circuit court on September 26, 1922. Our primary election law has recently been construed, in the case of *McClain* v. *Fish,* 159 Ark. 199. In that case the court said that § 3777 of Crawford & Moses' Digest does not restrict the right of a voter in a primary election, but merely regulates the method of voting and the preservation of the evidence of an elector's right to vote.

The court held further that, under this section of the statute, when a voter's name does not appear on the certified list of voters required to be furnished the election judges by Crawford & Moses' Digest, § 3740, he must prove his qualifications as an elector in the manner required by the statute, so as to entitle him to vote, and, if he fails to do so, his ballot may be rejected; and if, without such proof, he has been permitted to vote, his ballot may be rejected on a contest in the court.

This section of the statute was copied in full in the case just cited, and no useful purpose could be served by copying it again here. This holding proceeded upon the theory that the statute regulating primary elections was mandatory because it both gave, directed, and declared what the consequences of neglecting their observance should be.

The court was of the opinion that the statute was intended to prevent fraudulent voting, and that, if the Legislature believed the good to be accomplished from its enforcement would outweigh the occasional evil resulting from its strict enforcement, that was within the province of the Legislature, and the courts could not interfere.

The primary election statute provides for the counting of the ballots and the declaration of the re-

sult by the county central committee of the party holding such primary election. There is also a provision for the procedure to contest the certificate of nomination or the certification of the vote as made by the county central committee.

The burden of proof in such a contest is upon the contestant. In the first place, it may be said that the failure on the part of the contestee to prove his right to the nomination would not establish that of the contestant. In the next place, the returns are made by persons charged by the statute with the duty of receiving and canvassing the ballots, and the presumption which always exists in favor of the due performance of official duty makes the returns and the certificate *prima facie* evidence of the facts contained in them. The election, however, and not the returns, is the foundation of the right to an elective office, and for that reason provision is made for contesting the election and throwing out fraudulent and illegal votes.

As we have already seen, the present case was tried in the circuit court before the decision in the case of *McClain* v. *Fish, supra,* was rendered in this court. It does not seem that the contestant asked the circuit court to observe the procedure laid down in the case just referred to, and for that reason he is in no attitude to complain for the first time in this court that such procedure was not followed. It was his duty to have asked the court to follow that procedure and to have saved exceptions to the ruling of the court if it had refused to do so. Then it could have been made the basis of an assignment of error calling for a reversal of the judgment.

In other words, the contestant does not allege in his complaint that any votes were cast for the contestee other than those on the printed list required by § 3740 of the Digest. No proof was made by contestant showing that any qualified electors voted for contestee whose names did not appear upon the certified list of poll-tax payers required to be printed and furnished the election judges,

or who had not filed with the election judges his poll-tax receipt as required by the statute. Hence the declaration of law asked by contestant, to the effect that, under § 3777 of the Digest, in any contest arising under the act, it shall be grounds of rejection of any ballot cast by an elector that his name does not appear upon the certified list of poll-tax payers, or who has not filed with the judges of the election his poll tax receipt or the affidavit of attainment of his majority in the form provided by the statute, was an abstract one, not applicable to the facts in the case. In the absence of proof, such a declaration of law by the court, while correct in the abstract, would be harmless if there was no evidence requiring its application. The refusal to give the declaration of law as asked could result in no prejudice to the contestant.

Doubtless, counsel for the contestant had the same view of the meaning of § 3777 as did the writer of this opinion before the case of *McClain* v. *Fish, supra,* was decided by this court. While the writer thought that the judges of the election should not receive the ballot of any one whose name did not appear on the certified list, or who had not filed his poll-tax receipt, or written attainment of his majority, as required by statute, yet, if the judges actually received the ballot of a qualified elector, this ballot could not be thrown out because the voter had not complied with the statute. The writer thought that this portion of the statute was invalid because it was in conflict with art. 3, § 11, of our Constitution, which provides that, if the officers of any election shall unlawfully fail to receive, count, or return the vote or ballot of any qualified elector, such vote or ballot shall nevertheless be counted upon the trial of any contest arising out of said election. But in *McClain* v. *Fish, supra,* it was said that constitutional provisions with respect to elections do not apply to party primaries, and *Hester* v. *Bourland,* 80 Ark. 145, was cited.

In that case the court held that, under our Constitution, chancery courts can only be vested with matters of

equity, and that contests for party nominations have never been so considered. It was also held that art. 19, § 24, of the Constitution, saying that the General Assembly shall provide by law the mode of contesting elections in cases not specially provided for in this Constitution, had reference only to elections for office, and not for nominations. Hence it was held that this section did not confer jurisdiction upon chancery courts to hear primary election contests.

I cannot see how this holding would prevent the Legislature from making art. 3, § 11, to apply to primary elections. Section 3780 of our statute expressly provides that primary elections shall be conducted in conformity with the primary act and the general election laws of the State; and that they shall be, to all intents and purposes, legal elections. This section carries into our primary election laws all of the provisions of art. 3 of our Constitution appertaining thereto. If none of the provisions of our Constitution with regard to elections can be made to apply to primary elections, what become of our provisions of the Constitution with regard to the qualifications of electors, the right of suffrage, and our poll-tax amendment to the Constitution when applied to primary election laws?

It is also contended by counsel for appellant, who was the contestant in the court below, that, under the provisions of the statute, the county collector had no right to issue additional poll-tax receipts to persons offering to pay a poll-tax on and subsequent to the first Monday in July just preceding the primary election in August, 1922. The statute does not give the county collector the power to assess a poll-tax and deliver it to a person otherwise qualified to vote at an election. Hence he can have no such power. His power is only to collect a poll-tax as provided.

Section 3741 provides that any person liable to pay a poll-tax, and who has paid the same at any time within the dates named in the section, shall, if possessed of the

other qualifications required by law of an elector, be entitled to vote at any election held in this State, as provided in the statute. None of the provisions of the statute governing primary elections gives the collector the right to assess or collect poll-taxes subsequent to the last day fixed by the statute for paying the same.

It is the contention of counsel for the contestant in this case that the contestee purchased a large quantity of poll-tax receipts after the last day allowed by law for paying the same prior to the primary election held in August, 1922, and persons holding them voted at the primary election, and that if these illegal ballots had not been received by the election judges at certain election precincts in the county, the contestant would have received the highest number of legal votes cast at the primary election and would have been declared the nominee for county judge.

Conceding that these poll-tax receipts were illegally issued by the collector and purchased by the contestee or other persons for his benefit, still this falls short of establishing that the illegal votes were cast for the contestee. The ballots must have been cast by the persons holding the poll-tax receipts, and, in the absence of a showing, we have no means of knowing how they voted. The contestee might have furnished the receipts and intended them to vote for him. The votes may have been cast for the contestant or for some other person.

As we have already seen, the burden was upon the contestant to show that he was entitled to the office, and he has failed in this respect.

It follows that the judgment of the circuit court must be affirmed.