CAIN v. CARLLEE.

Opinion delivered June 7, 1926.

ELECTIONS—PAYMENT OF POLL-TAX.—Where voters, in good faith and for their own convenience, requested a mercantile company, by which they were employed or with which they regularly did business, to pay their poll-tax, and they reimbursed the company therefor, exclusion of their votes was error.

Appeal from Woodruff Circuit Court, Southern District; *E. D. Robertson,* Judge; reversed.

*Roy D. Campbell,* for appellant.

McCULLOCH, C. J. This appeal involves a contest between appellant and appellee over the nomination of the Democratic Party for the office of county judge of Woodruff County at the election held in August, 1924. The official returns showed that appellee received the nomination, and appellant instituted a contest. The case has been here on two former appeals from judgments in favor of appellee. 168 Ark. 64; 169 Ark. 887. On each appeal the judgment of the circuit court was reversed, and the cause remanded for a new trial.

According to the original returns of the election officers, appellee received 925 votes and appellant 910—a majority of 15 for appellee. On a recount of the ballots by the canvassing board, on demand of appellant, it was found that the ballots showed 847 for appellee and 815 for appellant—a majority of 32 for appellee.

On the second trial of the cause the principal questions of fact related to the number of votes cast for the respective parties by persons who had not been legally assessed for the payment of poll-tax, and during the progress of the trial the attorneys, by agreement, made a canvass of the ballots and reached an agreement as to most of the alleged illegal ballots. They reported to the court an agreement that, after deducting certain ballots, there were left 676 for appellant and 638 for appellee. A certain number of ballots about which there was no agreement was left to a decision of the court, upon hearing the facts and all other disputed issues, which

were to be left to the court, and on final hearing the judgment was, as before stated, in favor of appellee, which judgment was reversed on the last appeal.   169 Ark. 887.

In the last trial below, the court, after hearing the evidence, made a finding that appellee received 613 legal votes and appellant 612—a majority of one vote in favor of appellee, and judgment was rendered accordingly.   The court in making its findings excluded from the count 32 ballots cast in favor of appellant by voters whose poll-tax had been paid by Planters' Mercantile Company, a corporation engaged in business at McCrory. It is undisputed that all of those ballots were in favor of appellant, and if the trial court was in error in excluding them, a reversal of the judgment must necessarily follow.

The evidence shows that the officers and manager of the Planters' Mercantile Company were partisans of appellant in the election, and that, some time prior to the election, a printed card was circulated in the following form:

"Order to pay poll-tax.   Date................................................1924.
"To Planters' Mercantile Co.:

"Please pay my poll-tax and charge same to me.   It is understood and agreed that for you to do so shall in no way have any bearing or influence on my voting for or against any question submitted to the people, or any candidate for any office.

"Signed................................

"Postoffice address...................................   Township..................
"School district..................................   Voting Precinct."

Some of these cards were signed by voters and handed in or sent to the Planters' Mercantile Company, and poll-taxes were paid by the company pursuant to the request expressed on the card.   It does not appear from the testimony how many of these were signed and handed in.   It does appear, however, that the Planters' Mercantile Company paid poll taxes on request of voters expressed in the card.   The company paid in all 89 poll taxes and was reimbursed—in some instances by the voters themselves and the remainder from the treasury

of the incorporated town of McCrory. The proof tended to show that appellant was a party to the circulation of these cards among voters and also in the distribution of tax receipts paid in that way. It is undisputed, however, that 17 of the voters whose poll taxes were paid by the Planters' Mercantile Company and whose ballots, in favor of appellant, were excluded by the court, procured the Planters' Mercantile Company, in good faith, to pay the poll taxes for them, without solicitation on the part of the agents of the company, or other inducement. Some of these persons were employees of the Planters' Mercantile Company, and many others were regular customers for whom the company had paid taxes in previous years, and in all of these instances the amount paid was refunded to the company. In many instances the money was paid to the company in advance. In other words, the undisputed proof is that in each of the 17 instances mentioned the payment of poll taxes by the Planters' Mercantile Company was made at the request of the voter and merely as a matter of convenience, without any regard to any influence upon the then approaching election. This being true, it was error for the court to exclude them from the count. The learned trial judge based his conclusion upon the decision of this court in *Whittaker* v. *Watson*, 68 Ark. 555, but we are of the opinion that he placed the wrong interpretation upon the effect of that decision in holding that the payment of poll taxes by the Planters' Mercantile Company invalidated all of the ballots cast by persons whose poll taxes were paid under any circumstances by the company. In the case cited the court said:

"He (the voter), however, need not pay the tax in person, but may in good faith authorize another to pay it for him, or, if another has done so without having been previously authorized, he may adopt or ratify the act, but he must do so with a *bona fide* intent and promise to reimburse him. In this way only can the voter be secured in the free and untrammeled exercise of his

right of suffrage. The acceptance of the payment of a poll tax as a gift tends to induce him to so vote as to please the partisan, candidate or other person, who paid the same for him. This is contrary to the spirit of the requirements of the Constitution.''

The evidence in this case shows affirmatively and beyond dispute that there was no element of gift involved in the payment of the poll taxes of the seventeen persons hereinbefore referred to; therefore the payment made for them does not fall within the condemnation expressed in *Whittaker* v. *Watson, supra.* The fact that other voters may have been induced by this procedure to accept a gratuity, or the fact that the circulation of the printed card couched in carefully selected language was intended as an improper inducement to voters cannot invalidate the ballot of a voter who in good faith procured the payment of his poll tax by the Planters' Mercantile Company. The court should therefore have excluded from the count only those who accepted payment as a gift, either expressly or impliedly.

The judgment must be reversed, as the inclusion of these 17 votes gives appellant a majority of 16, which entitled him to the nomination.

There are a few other excluded ballots which appellant contends should have been counted for him, but it is unnecessary to discuss them.

Every issue of fact in the case has been settled in the trials, and no useful purpose would be served in remanding the cause for another trial. Appellee was elected county judge as the Democratic nominee at the ensuing election, but, since the transcript on the present appeal was lodged in this court, it has been brought to our attention by counsel for appellee, on motion to abate the contest, that appellee had resigned the office. The court overruled the motion to abate, but nothing remains of the contest, according to that decision, except the costs of the proceedings.

The judgment of the circuit court is therefore reversed, and judgment will be entered here in favor of

appellant for all of the costs of the proceedings, including the costs in each trial in the court below and the costs of the appeal. It is so ordered.