### TAAFFE *v.* SANDERSON.

### Opinion delivered May 2, 1927.

1. ELECTIONS—CONTESTS.—The purpose of the court in all election contest cases is to determine whether the contestant or the respondent has received the highest number of legal votes.

2. ELECTIONS—CANDIDATE'S PLEDGE.—The candidate's pledge that he was familiar with the Corrupt Practice Act (Crawford & Moses' Dig., § 3896, *et seq.*) and all laws governing the same, *held* substantial compliance with § 3898, requiring a statement that the candidate will in good faith comply with its terms, especially where it was not contended that provisions of the Corrupt Practice Act had been violated.

3. ELECTIONS—AFFIDAVIT OF REPUTABLE CITIZEN.—Appellant in an election contest could not complain of the court's holding that one of 11 persons supporting contestant's affidavits was not a

"reputable citizen" in the sense of a qualified elector, under Crawford & Moses' Dig., § 3772, where the person objected to was in all respects qualified except that he had not resided in the ward 30 days at the date of the primary, under § 3757 *et seq.*

4. ELECTIONS—QUALIFIED VOTERS.—Voters who requested others to make payment for them of poll taxes and obtain receipts were not disqualified from voting, where voters promised to pay and did pay third persons the amount of such tax.

5. ELECTIONS—QUALIFICATION OF VOTERS.—Voters *held* not deprived of the right of suffrage by the fact that the bank which was to pay their poll tax for them as agent made the payment after the time allowed, where the payment was made in pursuance of the tax collector's agreement extending credit..

6. TAXATION—LIABILITY OF COLLECTOR.—The tax collector is responsible on his official bond for any credit extended to taxpayers, and is not subrogated to the State's right of lien.

7. ELECTIONS—CANVASS OF BALLOTS.—In an election contest, a ruling that the ballots would be opened and canvassed did not require the court to render judgment for the contestees where contestants closed their case with the reservation of the right to offer ballots at the conclusion of all testimony.

8. APPEAL AND ERROR—DISCRETION AS TO COURSE OF TRIAL.—Trial courts are vested with a large discretion ·in determining the orderly ·course of trial, which will not ·be reversed except for manifest abuse of discretion.

9. ELECTIONS—ASSESSMENT OF MARRIED WOMEN.—Where married women voters placed on the tax books had not been properly assessed for poll taxes because their names were placed after their husbands' names with the words "and Mrs.," such women had no right to exercise the franchise as qualified electors. ·

10. STATUTES—EXTENSION OF PRIVILEGE.—Where a· privilege is extended to one· class of citizens on certain conditions and subsequently thereto the like privilege is conferred on another class, conditions attached to the exercise of the privilege necessarily attach to the subsequent class.

11. STATUTES—EXTENSION BY INFERENCE.—A statute extends by inference to cases not originally contemplated when it deals with a class within which a new class is brought by later statutes.

12. ELECTIONS—ADDITION OF NAMES TO THE POLL TAX LIST.—In an election contest under Crawford & Moses' Dig., § 3773, the action of the court in striking out the names of persons as electors who, after delinquency, had their names added to the clerk's list by the sheriff and deputies on payment of poll tax and penalty, instead of by clerk, *held* proper; their assessment being erroneous, under § 3738.

13. ELECTIONS—QUALIFICATION OF VOTERS.—In an election contest under Crawford & Moses' Dig., § 3773, voters from other counties who did not appear on the official printed list of taxpayers, and who gave no evidence of qualification, and persons who had become 21 since the last assessment time, *held* disqualified as electors, under § 3777.

14. ELECTIONS—PRINTED LIST OF VOTERS.—In an election contest, under Crawford & Moses' Dig., § 3773, the printed list of qualified voters, complying with § 3740, the printed signature of the county clerk certifying thereto, *held* the official list, rendering voters whose names did not appear thereon disqualified in the absence of other evidence of qualification.

Appeal from Little River Circuit Court; *B. E. Isbell,* Judge; affirmed.

*Otis Gilleylen, J. R. Morrell, Abe Collins* and *A. D. DuLaney,* for appellant.

*John J. DuLaney, A. P. Steel, Feazel & Steel* and *James D. Head,* for appellee.

McHANEY, J. At the Democratic primary, August 10, 1926, in Little River County, appellant, George Taaffe, appellee, J. G. Sanderson, Charles Billingsley and P. M. McCord were rival candidates for sheriff and collector. Appellant, A. T. Collins, appellee, C. S. Cobb, W. D. Waldrop and W. E. Kinsworthy were rival candidates for county judge. On the face of the election returns Taaffe was nominated for sheriff and Collins for county judge. Sanderson and Cobb, each having received the next highest votes to the winners for the respective offices, and being dissatisfied with the result as reflected by the returns, filed a contest before the county central committee at its meeting on August 13. The committee spent two days hearing the contest, and, after due deliberation, found that Taaffe and Collins had won, and dismissed the contests. Thereafter, on the 23rd day of August, and within the time provided by law, the contestants filed separate identical complaints in the circuit court against Taaffe and Collins, to which separate identical answers were made, the cases consolidated, tried, and briefed together. Each complaint was verified by what purported to be ten reputable citizens, and, in addition to all the

formal jurisdictional matters necessary, it charged that Collins and Taaffe were the sheriff and collector and deputy sheriff and collector, respectively, and conspired together to nominate Taaffe to succeed Collins, and to nominate Collins, the retiring sheriff, to the office of county judge, and to accomplish the alleged conspiracy by issuing poll-tax receipts to voters favorable to them, without being assessed as required by law, and to put such names on the clerk's delinquent list; that 150 names were thus placed on the clerk's list; that they placed the names of 60 women voters on the taxbooks by adding the words "and Mrs.," with the initials of the husband, after the husband's name, and that these women had not been assessed properly; that other names were improperly placed on the taxbooks by them, and that a number of poll-tax receipts were issued after July 3, in violation of law. Many individual voters were challenged in a number of townships, and other allegations of irregularities on the part of election judges in permitting many persons to vote who were not qualified electors, were made, the contention being that such votes cast for the contestees should be thrown out, and, by so doing, would result in the nomination of the contestants.

The case was submitted to the learned trial judge without a jury, a jury not being necessary or proper under the law. Section 3773, C. & M. Digest. The hearing was begun on September 14, and, after very patiently and painstakingly hearing a mass of testimony, running through a record of almost 1,000 pages, the court, on September 25, rendered a judgment finding that Sanderson had defeated Taaffe for sheriff and collector by 46 votes, and that Cobb had defeated Collins for county judge by 13 votes. To reverse this judgment the contestees have appealed to this court.

Before proceeding to a discussion of the issues we deem it proper to observe that the real object of the courts in all election contest cases is to determine whether the contestant or the respondent has received the highest number of legal votes. This should be the guiding star,

like the Star of Bethlehem to the wise men of old. This court, 50 years ago, in the case of *Govan* v. *Jackson,* 32 Ark. 553, so held, and, further, that the contest is "not confined to the ground specified in the contestant's notice of contest." This case was cited with approval in *Ferguson* v. *Montgomery,* 148 Ark. 83, 229 S. W. 30, and in *McLain* v. *Fish,* 159 Ark. 199, 251 S. W. 686.

There can be no real representative form of government, no real representative democracy, without honest elections, and there can be no honest elections where the will of a majority or plurality of the qualified electors is. thwarted and not permitted to prevail. In order to prevent this the Legislature has passed many laws, including what is commonly known as the Corrupt Practice Act, § 3896 *et seq.,* C. & M. Digest; and the people, by the initiative, have enacted a law known as the Brundidge Primary Election Law, § 3757 *et seq.,* C. & M. Digest. These acts were born of experience, and the courts have sustained and enforced them.

We come now to a consideration of the points of law raised by counsel on this appeal.

1. It is first contended that Sanderson failed to comply with the Corrupt Practice Act in that he failed to file the pledge required by § 3898 of C. &. M. Digest with the county clerk thirty days before the election, "stating that he is familiar with the requirements of this act, and will, in good faith, comply with its terms." This complaint does not apply to Cobb. Sanderson did file in proper time the following pledge: "I, James G. Sanderson, hereby certify that I am familiar with the Corrupt Practice Act applying to the Democratic primary, and all of the laws governing same." His pledge was defective in that he omitted to say that he would in good faith comply with its terms, and appellant Taaffe contends that this was a fatal defect, for the reason that he could not legally be a candidate until he had literally complied with this requirement. We do not think this point well taken, and we hold that this was a substantial compliance, especially so in view of the fact that it is not contended

that any other provision of this act was violated or that Sanderson was guilty of any of the corrupt practices denounced by the act.  Moreover, it is difficult to perceive how Taaffe can be heard to complain of this defect in the pledge, if, in fact, he did not receive a sufficient number of votes to give him the nomination, as the court held.  Certainly, if he did not receive a plurality of the votes, no court could declare him the nominee.

2.  The next contention is that the complaints of both contestants were not supported by the affidavits of ten qualified electors as required by law, and that Sanderson was not himself a qualified elector.  No such contention is made as to Cobb.  Each complaint is supported by eleven affiants who claim to be qualified electors.  By § 3772, C. & M. Digest, the complaint must be supported "by the affidavits of at least ten *reputable citizens,*" the words "qualified electors" not being used.  But this court held in *Simmons* v. *Terrall,* 145 Ark. 588, 224 S. W. 977, that the word "citizens" as used in the act is synonymous with the word "electors."  So the meaning is the same.  One of the affiants, C. P. Smith, was a citizen and resident of Jefferson Township, just outside the corporate limits of the city of Ashdown, and, 12 days.before the primary election, he removed from thence to ward 2 in the city of Ashdown. With the exception that he had not resided in ward 2 thirty days at the date of the primary, or at the date of signing the affidavit, he was in all respects a qualified elector. The court held that this affiant was not a qualified elector, and appellant cannot complain.  We do not decide whether the court properly so held, as it is not necessary in this case.  There does not appear to be any serious contention about the qualifications of the other ten affiants, except as to two, Joe Gill and G. C. Cobb, but it is suggested that they were not sworn according to law.  Counsel are in error, as the affidavit appended to the complaint is in due form.  It appears that tax receipts for affiants Joe Gill and G. C. Cobb were obtained from the collector in apt time by others, at their request, on their promise to pay, and for which they did pay.  The

same thing is true with reference to Sanderson. His partner, Mr. Orton, obtained a tax receipt for all members of the firm of Sanderson & Orton and for a number of their employees, tenants and customers, including Joe Gill. G. C. Cobb's poll tax was paid by check of the Cobb Grain Company. There is no merit to this contention. *Whittaker* v. *Watson*, 68 Ark. 555, 60 S. W. 652; last case of *Cain* v. *CarlLee*, 171 Ark. 334, 284 S. W. 40. In the latter case this court said: "The evidence in this case shows affirmatively and beyond dispute that there was no element of gift involved in the payment of the poll taxes of the seventeen persons hereinbefore referred to; therefore the payment made for them does not fall within the condemnation expressed in *Whittaker* v. *Watson, supra.*"

3. It is further contended under this heading that payment of the poll taxes in question was not made until after July 3, and that this disqualifies them. The facts are that the firm of Sanderson & Orton is a very large taxpayer, the tax bill of this firm amounting to approximately $7,000. The collector issued the poll-tax receipts for this firm in apt time, but actual payment therefor was not made by the firm until required by the collector before settlement. The effect of this transaction was that the collector extended credit to this firm, in accordance with the usual and almost, if not entirely, universal custom so to do in the case of banks, trust companies and other large taxpayers, who pay taxes not only for themselves but for their customers and clients. The fact that a bank, as my agent, has paid my poll tax after Saturday before the first Monday in July, by an arrangement with the collector not to pay before that time, certainly could not have the effect of depriving me of my constitutional right of suffrage. The collector is responsible on his official bond for any credit extended taxpayers, and is not even subrogated to the State's right of lien. *N. Y. Life Ins. Co.* v. *Nichols*, 170 Ark. 791, 281 S. W. 21. We therefore overrule this contention.

4. It is next contended that the court erred in refusing to render judgment for the contestees at the close of contestant's evidence. This contention is based on the ruling of the court that it would require both parties to introduce all proof relative to the disqualification of voters challenged, so as to enable the court to determine such qualifications, and then the ballots would be opened and canvassed to determine how such persons voted, to enable the court to determine the net result on each contest; and the contestants closed their case with the reservation of the right to offer the ballots in evidence at the conclusion of all the testimony. There was no error in this ruling, as trial courts are vested with a very large discretion in determining the orderly course of the trial, and this court will not reverse therefor, except for a manifest abuse of such discretion. Furthermore, this court seems to have recognized the correctness of this procedure in the case of *Blann* v. *Benton,* 171 Ask. 805, 284 S. W. 40.

5. It is next contended that the court erred in holding that the women voters who were on the so-called "Mrs." list hereinbefore mentioned were not qualified electors, 49 of whom voted for Taaffe, and one of whom voted for Sanderson, and 6 for Cobb. A majority of the court, with which Mr. Justice Wood, Mr. Justice Humphreys and the writer of this opinion do not agree, hold that this contention is not well taken. This identical question as now raised has never before been directly decided by this court. The authority for the right of women to vote is contained in Amendment No. 19 to the Federal Constitution as follows:

"The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex," and Amendment No. 8 to the Constitution of this State, a portion of which reads as follows:

"Every citizen of the United States of the age of twenty-one years, who has resided in the State twelve months, in the county six months, and in the precinct,

town or ward one month, next preceding any election at which they may propose to vote, * * * and who shall exhibit a poll-tax receipt or other evidence that they have paid their poll tax at the time of collecting taxes next preceding such election, shall be allowed to vote at any election in the State of Arkansas,'' etc.

This amendment was adopted at the general election in 1920, and superseded the poll-tax Amendment No. 6 adopted in 1908, which requires the payment of a poll tax of all male persons as a condition precedent to the right to vote. The Legislature in 1909 passed an act, one of the sections of which is brought forward in C. & M. Digest as § 3738, which provides that, after the taxbooks are delivered to the collector, any person whose name has, for any reason, been omitted, or not assessed, may have his name included in the list and placed upon the books in the hands of collector, by application to the county clerk at any time before the last Saturday before the first Monday in July, in which case the clerk shall certify the supplemental list to the collector and charge him with the amount of tax and penalty so added. In addition to the poll tax the clerk is required to assess a penalty of $1 for failure to assess, and, in addition to the assessment of a poll tax in such cases, the clerk is required to assess any property owned by the applicant, which, for any reason, has been omitted from the taxbooks. The majority is of the opinion that the language of this section is broad enough to include women, although the masculine gender is used throughout the section, and that this contention falls within the principle that, where a privilege is extended to one class of citizens upon certain conditions, and that, subsequent thereto, a like privilege is conferred upon another class, the conditions attached to the exercise of such privilege by the former class necessarily attaches in like manner to the subsequent class. There is a well-established principle of law which applies to the construction of constitutions as well as statutes, and that is that a statute extends by inference to cases not originally contemplated when its deals with a class within

which a new class is brought by later statutes. *Nations* v. *State,* 64 Ark. 467, 43 S. W. 396, and case-note to 4 Ann. Cas. at 7.

In the first CarlLee case, 168 Ark. 64, a number of persons were challenged for the reason that their names had been illegally added. to the taxbooks without being assessed according to law. The court, in its opinion, does not say that women voters were on the list of such names, and, without mentioning any distinction, quoted with approval from *Craig* v. *Simms,* 160 Ark. 269, 255 S. W. 1, and said: "The statute does not give the county collector the power to assess a poll tax and deliver it to a person otherwise qualified to vote at an election. Hence he can have no such power; his power is only to collect a poll tax as provided."

It is the contention of the majority that the word "person," as above used, is broad enough to cover both males and females. While this is true, it is the view of the minority that, since the question was not directly raised, and therefore not before the court, in either the Craig or the CarlLee cases, so much of the opinion in these cases as would include women voters in this regard is *obiter,* and not authority for the question now before us.

A study of the constitutional provisions relating to the assessment and collection of a poll tax and the provisions of the statutes enacted pursuant thereto, leads inevitably, in the opinion of the minority, to the conclusion that, neither by constitutional nor statutory provision, is a woman required to assess a poll tax as is required of a man. Section 3, article 14, of the Constitution of 1874 provides for the support of the common schools by the assessment of a tax not to exceed two mills, and by an annual per capita tax of $1 to be assessed on "every *male* inhabitant of this State over the age of twenty-one years." The Legislature in 1905 submitted an amendment to this section, which was voted on as Amendment No. 5 at the general election in 1906, and declared adopted by the Speaker of the House on January

17, 1907, in which the State tax limit for schools was raised to three mills and the per capita or poll tax of $1 was again required of every *male* inhabitant over the age of twenty-one years, and raised the district school tax which might be voted from five to seven mills. Again, in 1918, another amendment to this section of the Constitution was adopted, fixing the State school tax at three mills and the per capita tax of $1 on every *male* inhabitant over the age of twenty-one years, and authorizing school districts to vote as much as twelve mills in any one year. This is amendment No. 9, and this amendment, together with the enabling acts passed pursuant thereto, was the law in force at the time the election in controversy was held in 1926. Again, in 1925, the Legislature submitted an amendment to this same section of the Constitution, fixing a State tax for schools of three mills, "an annual per capita tax of $1 to be assessed on every *male* inhabitant of this State over the age of twenty-one years," and fixed eighteen mills as the limit to be voted in school districts. This amendment was submitted at the general election in October, 1926, and was declared adopted by the Speaker of the House in 1927, and now appears as Amendment No. 11, so designated by the Secretary of State. So it will be seen that the Constitution nowhere provides for or requires the assessment of an annual per capita tax of $1 on any person except *males* over the age of twenty-one years. Nowhere do we find a provision that women are required to assess and pay an annual per capita tax. It will be seen from the woman suffrage amendment, heretofore mentioned, that every citizen of the United States is permitted to vote "who shall exhibit a poll-tax receipt or other evidence that they have paid their poll tax at the time of collecting taxes next preceding such election." The other provisions of the Constitution heretofore mentioned require *males* to assess a per capita or poll tax, but the only requirement with reference to women is that, in order to vote, they shall exhibit "a poll-tax receipt or other evidence that they have paid their poll tax at the time of collecting taxes

next preceding such election.'' The sections of the statutes relative to the assessment and collection of such annual per capita tax nowhere use language indicating any such requirement of women. See §§ 8979, 8993, 9889, C. & M. Dig. It is therefore the opinion of the minority that a woman is not required to assess or pay a poll tax in any event, unless she wishes to pay same in order to vote, and that the clerk could not assess her for a penalty for failure to assess at the time required of a man, because she is not required to do so, and that the provisions of § 3738 of the Digest are not therefore applicable to women voters.

6. It is next contended that the court erred in holding certain voters not to be qualified electors because not legally assessed on what is known in the record as the ''clerk's list.'' The court for this reason threw out 15 votes for Taaffe and 25 votes for Collins. The clerk, after turning the personal taxbook over to the collector, opened in the back of the book what is called the ''clerk's list,'' and on this list is placed the names of parties who failed to assess their poll tax during the assessment time, and their names were afterwards added. The clerk himself assessed four of such persons, but neither the clerk nor his deputies assessed any other names on such delinquent list. After turning the book over to the sheriff with the four names on it, he told the sheriff and his deputies to put the names of any delinquent persons thereon who desired to be assessed, without bothering him about it. Thereafter, when delinquents came to the collector's office who wanted to be assessed and pay the tax and penalty, they were permitted to do so, and the sheriff or his deputies added such names to the list. The court threw out such names added by the collector's office, on the ground that they had not been properly assessed, as provided by § 3738, C. & M. Digest, and we think this action of the court was proper. *Craig v. Sims,* 160 Ark. 275, 255 S. W. 1; *Cain* v. *CarlLee,* 168 Ark. 69, 269 S. W. 57.

7. It is next contended that the court erred in holding five voters from other counties not qualified because they failed to file with the judges of election their poll tax receipts, or certified copies thereof, or that the judges of election failed to return such evidence of qualification with the ballots. It was agreed that these persons had all the qualifications of electors in the counties from which they moved, and in Little River County, and in the precinct where they resided. But, having paid their poll tax in other counties, they did not appear on the official printed list of taxpayers, and it therefore became necessary for them to follow the provisions of the statute in order to be entitled to vote. Section 3777, C. & M. Digest. Since the same rules of law would apply to such voters as would to persons who had become twenty-one years of age since the last assessing time at which they could have assessed and been on the list, after twenty-one, raised by appellants' assignment No. 9, we will discuss the two together. Twenty-one votes for Taaffe and 17 for Collins were thrown out by the court of persons voting who had become twenty-one years of age within such time. We hold that there was no error in so doing, as the exact question is decided adversely to appellants' contention in *McLain* v. *Fish,* 159 Ark. 199, 251 S. W. 686; *Craig* v. *Sims,* 160 Ark. 267, 255 S. W. 1; *Storey* v. *Looney,* 165 Ark. 455, 265 S. W. 51; *Wilson* v. *Danley,* 165 Ark. 565, 265 S. W. 358; and in the three CarlLee cases.

8. The next contention of counsel is that the court erred in holding that the printed list of qualified electors was an official list and that the voters at the election who did not appear on such list, and whose vote was not accompanied by the other evidence required by law of the qualification of the voter, were not qualified electors, and threw out 14 for Taaffe and 10 for Collins of such votes for such reason. Section 3740 of C. & M. Digest makes certain requirements with reference to this official list of qualified electors of the county, and this section was not literally complied with. We hold that the requirements with reference to the publication of such list were sub-

stantially complied with.    All parties so recognized it
until this contest arose, and it bore the printed signature
of the county clerk, certifying thereto, and that, if a vot-
er's name 'did not appear thereon, he would be required
to file with the judges other evidence of his qualifications,
and such evidence would have to be returned by the
judges, under the authority of the cases heretofore cited.

   Several other contentions are made by counsel for
appellants, but we do not deem it necessary to take them
up separately and discuss them, as to do so would unduly
extend this opinion, if not already too long.    But suffice
it to say that we have examined each of the contentions
carefully and do not find any error of the court sufficient
to justify a reversal of this case.    The judgment of the
circuit court is therefore affirmed.