BROWN *v.* NISLER.

Opinion delivered March 11, 1929.

*Dean, Moore & Brazil* and *Downie & Schoggen,* for appellant.

*Strait & Strait* and *Ned Sellers,* for appellee.

McHANEY, J. Appellant and appellee were rival candidates for the office of sheriff of Conway County, before the primary election held on August 14, 1928. According to the returns of said election, as certified by the Democratic County Central Committee, appellee received 1,302 votes and appellant 1,121 votes, or a majority of 181 votes in favor of the appellee.

Within the time provided by law appellant instituted this contest in the circuit court of said county, by filing a complaint charging that he had received 1,121 legal votes, and that, although appellee was credited with 1,302 votes, 720 thereof were illegal, should not have been counted, and that he had therefore been nominated by a majority of 539 legal votes. The complaint further alleged that, of

the 720 illegal votes counted for appellee, 250 were illegal because they had not assessed any poll tax prior to the second Monday in September, 1927, either with the assessor or county clerk, and that more than 470 of said number of illegal votes should be rejected because their names did not appear on the certified list of legal voters furnished to the election judges, and that in no instance did the judges require persons whose names were not listed in the printed list of qualified electors to exhibit a poll-tax receipt or certified copy thereof, or an affidavit showing that any of such persons had attained the age of twenty-one years since the last assessing time, and that the judges wholly failed to make a separate list of the names of such persons voting who were not on the certified list, together with the other evidence of their right to vote, nor was any such record returned to the county central committee with the returns of the election, as required by law. The complaint further alleged in detail the names and numbers of persons so voting whose votes were charged to be illegal in the various townships, and challenged other votes on other grounds.

Appellee answered, denying all the material allegations in plaintiff's complaint, and filed a cross-complaint, alleging that appellant received many illegal votes for various reasons.

Much testimony was taken by both parties, and many weeks were consumed in the taking of testimony and in the trial of the case, running through a record of more than 1,200 pages. During the course of the proceeding the court appointed a canvassing committee of four persons to recount the ballots, of which each of the parties named two, and this committee, after canvassing the votes, made a report showing that appellee had received 1,275 votes and appellant 1,135, or a majority of 140 votes for appellee. This committee was appointed and made its report subject to the right of the court to hear the testimony and determine the legality of many votes. At the conclusion of the hearing, the court made the following finding:

"On this day the case of Fred Brown, contestant, versus Sherman Nisler, contestee, is submitted to the court upon the pleadings and testimony and the argument of counsel; and the court holds that § 3740, C. & M. Digest, was not substantially complied with, and that the printed list purporting to be a list of the poll-tax payers under said section was not made in the manner provided by law, and that it has no legal and binding effect, and that the contestant's cause of action fails because of the failure upon the part of the officers to file a proper list of the poll-tax payers in the manner provided by law, and the contestant's cause of action is therefore dismissed."

We are first called upon to decide whether the learned trial court was correct in so holding. If this holding of the court is correct, that is, that § 3740 of C. & M. Digest was not substantially complied with, it necessarily follows that appellant's contest must fail, because there is no basis for determining the legality of many of the votes challenged by appellant. This section of the Digest reads as follows:

"On the first Monday in July of each year the collector shall file with the county clerk a list containing the correct names, alphabetically arranged (according to political or voting townships, and according to color), of all persons who have, up to and including that date, paid the poll tax assessed against them respectively. The correctness of this list shall be authenticated by the affidavit of the collector in person. The county clerk shall at once record the said list in a well-bound book to be kept for that purpose, and, on or before the 15th day of July, shall deliver to the county election commissioners, or to the chairman or secretary of the said board, a certified copy thereof. The original shall be kept on file in the office of the said clerk, free to the inspection of any elector of said county, and the clerk shall, on demand, accompanied by the fee prescribed by law for making a copy of any instrument for record, make a copy thereof for any person. The county election commissioners shall cause to

be printed a sufficient number of said lists to supply to each judge of election at every general or special election a copy thereof, to be sent to such judge with the ballots and blank poll books now directed to be sent preparatory to holding an election. The said election commissioners are authorized to have said printing done at an expense not to exceed one dollar and fifty cents for each one hundred names on said list. The fees of the county clerk for all services to be rendered by him in filing, recording and furnishing to the election commissioners a certified copy of said list shall be ten cents for each one hundred words contained in said list and the certified copy thereof so furnished to said commissioners.''

The very first requirement of this statute is that the collector shall, on the first Monday in July, file with the county clerk the list of poll-tax payers, and that ''the correctness of this list shall be authenticated by the affidavit of the collector in person.'' The statute does not permit a deputy in the collector's office to authenticate the list, but it must be done by the collector himself, on his own affidavit. When the list is filed with the clerk, it is made his duty to record it in a well-bound book to be kept for that purpose, and, on or before the 15th of July, he is required to deliver a certified copy thereof to the county board of election commissioners, and shall keep the original as made by the collector in his office for the inspection of any elector. The statute next makes it the duty of the election commissioners to have printed a sufficient number of said lists to supply each judge of election at every general or special election a copy thereof, which shall be sent to the judges of election with the poll books and other election supplies. These are the positive requirements of the statute.

The evidence in this record shows that these provisions were wholly disregarded. The collector did not make such a list, or any list, of the poll-tax payers. No such list was verified by the collector, by his affidavit, in person, or otherwise. No such list verified by the collector was filed with the clerk, and a certified copy of no

such list was made by the clerk and delivered to the board of election commissioners. What did happen was, that the clerk took the taxbooks and himself made a list of the poll-tax payers, which he delivered to a printer to be printed. The printer printed the list given him by the clerk, and himself sent one copy thereof to the judges of election with the other election supplies for holding the primary election. The trial court held that this was not a substantial compliance with the act, and, we think, correctly so. It was no compliance with the act. True, this court held in *Taaffe* v. *Sanderson,* 173 Ark. 970, 294 S. W. 74, that a substantial compliance with the statute was sufficient, but in that case, while the opinion does not state what was done by way of compliance with the act, the record in that case, which we have again reviewed, shows that everything was done in compliance with the law except delivering the list to the election commissioners by the clerk, to be caused to be printed by them. Instead of doing that, the clerk delivered a certified copy of the list to the printer instead of to the election commissioners. The list was made by the collector and delivered to the clerk, as required by law. We do not know what the Legislature had in mind in requiring the list to be prepared, handled and published in the manner required by the statute, unless it was to throw as many safeguards around the preparation and publication of said list as possible, in order that it might import its own truthfulness and verity as other public records and documents. Upon the correctness of this list, in a vast majority of instances, depends the sacred right to vote and to have that vote counted by the judges of election and by the court in any contest growing out of any election. Section 3777, C. & M. Digest, provides:

"No person shall be allowed to vote at any primary election held under the laws of this State who shall not exhibit a poll-tax receipt or other evidence that he has paid his poll tax within the time prescribed by law to entitle him to vote at the succeeding general State election.

Such other evidence shall be: (a) A copy of such receipt, duly certified by the clerk of the county court of the county where such tax was paid; (b) or such person's name shall appear upon the list required to be certified to the judges of election by § 3740; or, if any person offering to vote shall have attained the age of twenty-one years since the time of assessing taxes next preceding such election, which period of assessment is here declared to mean between the second Monday in May and the second Monday in September of each year, and possesses the other necessary qualifications, and shall submit evidence by written affidavit, satisfactory to the judges of election, establishing that fact, he shall be permitted to vote. All such original and certified copies of poll-tax receipts and written affidavits shall be filed with the judges of election and returned by them with their other returns of election, and the said judges of election shall, in addition to their regular list of voters, make an additional list upon their poll books of all such persons permitted by them to vote, whose names do not appear upon the certified list of poll-tax payers, and such poll books shall have a separate page for the purpose of recording names of such persons. * * The certified lists required by § 3740 shall contain, in addition to the name of the person paying such poll tax, his color, residence, postoffice address (rural route, town or street address, where by ordinance the numbering of houses is required), the school district and voting precinct, and such list shall be arranged in alphabetical order, according to the respective voting precincts. The county election commissioners shall supply the judges of primary elections with printed copies of such lists. For each error rendering void the poll-tax receipt, in the transcribing, certification or printing of the names, color, residence, postoffice address, school district, or voting precinct of such persons, the collector, clerk or printer making the same shall be assessed the sum of one dollar, which sum or sums shall be deducted from any sums due such officer or printer from the county when settlements

are made with such officer or printer, and the enforcement hereof is made mandatory upon the county court. * * * In any contest arising upon any election held under this act, it shall be a ground of rejection of any ballot cast by an elector whose name (a) does not appear upon the certified list of poll-tax payers; or (b) who has not filed with the judges of election his original or certified copy of poll-tax receipt, or written affidavit of the attainment of his majority; or (c) if such original or certified copy of such poll-tax receipt or written affidavit has not been returned by the judges of election; or (d) the name of such person listed separately and certified as required by this act.''

It will be noticed in the above section of the statute that a penalty is provided against the collector, printer or clerk, whoever may make the error, of $1 for each error, the object being to have printed as nearly an absolutely correct list as possible. If the voter's name does not appear upon the printed list, his vote cannot be counted in any contest, unless the other evidence required by law is returned by the judges on a separate list with such other evidence. So it will be seen that the correctness and truthfulness of the list is made the basis for determining fundamental rights, not only of the candidates themselves, but of the citizen's right of franchise. The election judges in this particular case in Conway County did not require any other evidence of a person's right to vote, or, if so, they did not make and return a separate list of electors whose names did not appear on the printed list, with such other evidence of their right to vote. Therefore, treating the list as the basis for determining this contest as a legal list, the court would have been under the necessity of refusing to count any person's vote whose name did not appear on the printed list, as no other evidence was returned by the judges of the election.

The effect of not substantially complying with the law with regard to the preparation and publication of the printed list of voters was to nullify the list and leave the same condition as if no list had been printed at all. As

was held by this court in *McLain* v. *Fish,* 159 Ark. 199, 251 S. W. 686, the provisions of the statute, § 3777, C. & M. Digest, are mandatory. And in *Storey* v. *Looney,* 165 Ark. 455, 265 S. W. 51, it was said:

"We decided in the case of *McLain* v. *Fish,* 159 Ark. 199, 251 S. W. 686, that the provisions of the statute quoted above (§ 3777, C. & M. Digest), are mandatory, and that, in the contest of an election, where a list was published as required by statute, the qualifications of voters not on the list must be proved in accordance with the statute, or be excluded."

In *Storey* v. *Looney, supra,* there was no published list of persons who paid their poll tax furnished to the election officers, and none of the persons voting at the election furnished the judges of election other evidence of their right to vote. Appellant there contended that the election was totally void; that there was no legal nomination made. The court said:

"The question necessarily presents itself in the beginning, whether or not appellant is in an attitude to contest the certificate of nomination awarded to appellee. Appellant's contention being that there was no valid nomination at all, he is not a claimant himself for the nomination, and all that can be done by the court is to cancel the certificate of nomination awarded to appellee. This is therefore not really a contest for nomination as contemplated and authorized by the statute. In order to make a contest for the nomination, appellant must show that he is entitled to the nomination himself, which he fails to do."

In the case before us, appellant contends that he is the rightful nominee. He is contesting appellee's right to the nomination, and claims that he received a majority of the legal votes, but he bases his contest almost entirely on the printed list, and since, as we have already shown, the printed list was invalid, not having been compiled in substantial compliance with the provisions of the statute,

his contest must necessarily fail, and the circuit court was correct in dismissing his complaint.

Judgment affirmed.

SMITH and KIRBY, JJ., dissent.