ROBINSON *v.* KNOWLTON.

Opinion delivered June 29,.1931.

*H. T. Harrison, R. E. Wiley* and *Roy D. Campbell,* for appellant.

*George W. Emerson, Price Shofner, Fred A. Isgrig, John L. Krumm, J. H. Carmichael* and *June P. Wooten,* for appellee.

MEHAFFY, J. A primary election was held in the city of Little Rock on the 10th day of November, 1930, in which there were three candidates for the office of mayor; Horace A. Knowlton, the appellee, Pat L. Robinson, the appellant, and Bob Brown.

The Democratic City Central Committee convened on November 12, 1930, and certified the vote as follows: Horace A. Knowlton, 4,537; Pat L. Robinson, 4,554; Bob Brown, 61.

The appellee, after the election, filed a petition with the Central Committee, asking that the clerk be directed to take the poll registers of the various precincts from the ballot boxes to the end that copies might be made of same. The appellee also requested the Central Committee for a recount of the ballots, and that illegal votes be cast out. This request was denied by the Central Committee.

On the 15th day of November the appellee filed his complaint in the Pulaski Circuit Court, contesting the nomination of the appellant for the office of mayor. In this complaint it was alleged that many illegal ballots had been cast and counted for appellant, and that certain votes which had been cast for the appellee had not been counted, and that in one precinct 10 unsigned ballots which had been cast for appellee had not been counted by the judges. It was also alleged that 10 persons living outside of the city of Little Rock had voted for appellant; that 150 persons voted in precincts in which they did not live, and had voted for appellant; that one of the polling precincts had been changed without authority of law; and that certain absentee ballots had been made out on Sunday preceding the election.

It was further alleged that the appellant had received more illegal votes than the appellee, and that many persons had voted whose names were not on the printed list of electors, and whose right to vote was not proved, as required by law; that there were 300 of these, and 200 of them voted for appellant; that many persons voting for the first time had failed to make the affidavit required by law, but were permitted to vote for appellant. The appellee prayed that the ballot boxes be purged of illegal votes. This complaint was signed by a sufficient number of supporting affidavits.

The appellant, within 10 days, filed an answer and motion to make the complaint more specific. It was alleged in the motion that the complaint was too general, indefinite, and uncertain in certain particulars set out in the motion. The appellant's answer to the original complaint admitted the allegations as to the election and as to the casting up of the returns, but denied that there were any illegal ballots cast or counted for him. He denied there were any unsigned ballots cast for appellee but not counted. In fact, he denied all allegations as to irregularities or illegal votes.

On the 22nd day of November, the last day on which a contest could be filed under the law, the appellee filed an amendment to his complaint in which he stated that, in addition to the allegations of his complaint, he further alleged that the votes tabulated by the Democratic City Central Committee upon the race for mayor, showed Robinson received 4,454 votes, Knowlton, 4,537 and Brown, 63. He alleged that 1,432 persons whose names did not appear on the certified list, or those who paid their poll taxes within the time prescribed by law, were permitted to cast their votes in the election. It was also stated in the amendment that the persons named did not file with the judges of the election poll tax receipts or written affidavits of the attainment of the majority, where such voters had attained their majority since the time for assessing taxes. It was further alleged that the

total vote for appellee exceeded the total vote for the appellant. The amendment named several persons who it alleged it voted illegally.

Upon the filing of this amendment, the appellant filed an answer to it denying the allegations made by appellee. A response was filed by appellee to the answer and motion to make the complaint more specific.

There was a great deal of testimony taken, the transcript containing more than 1,800 pages. There were more than 9,000 votes cast in the election on the 10th of November, and, as shown by the face of the returns, appellant received 17 votes more than appellee.

After a thorough and painstaking investigation and trial, the circuit court found that appellee had received 10 votes more than the appellant.

There is no evidence that either of the parties knew of any irregular or illegal votes being cast for him in the election.

When the circuit court decided the case, holding that appellee was entitled to the nomination, his name was placed on the ticket as nominee for the mayor of the city of Little Rock, and he was elected at the election in April.

Appellant prosecutes this appeal to reverse the judgment of the circuit court.

Appellee contends that the appeal should be dismissed. He calls attention to §§ 3772, 3773 and 3774, which provide among other things that, if the contest is not determined until after the election, and the defendant in such proceeding is elected to the office as the nominee of the party, and it is determined that he was not entitled to the nomination, then such judgment shall operate as an ouster from office and the vacancy in it shall be filled as provided by law for filling vacancies in such office, in case of death or resignation. It is contended that this section has reference to the contestee alone, and does not mean that the contestant may be ousted if the decision is finally against him.

In the case of *Ferguson* v. *Montgomery,* this question was before the court. It was there contended that the ouster provision applied to the contestee only and not to the contestant, and the court in that case said: "We think that the word 'defendant' as used in the section was not intended to be used in its strictly technical sense, but that it should be given a broader interpretation so as to carry out the act instead of destroying or crippling its usefulness. This court has already declared that the act should receive a liberal interpretation so as to effectuate the wholesome purposes intended by its framers." *Ferguson* v. *Montgomery,* 148 Ark. 83, 229 S. W. 30.

It is manifestly the intention of the act that, if either party should be placed on the ticket as the nominee and elected to the office, and it was afterwards determined that he was not entitled to the nomination, the judgment of the court should operate as an ouster from office. It was not the intention of the act that the judgment should operate as an ouster if the contestee was successful in the election, and not operate as an ouster if the contestant was elected to the office.

As this court has said, these statutes should be liberally construed so as to effectuate the purposes intended by the framers. The evident purpose in providing that the judgment should operate as an ouster was to prevent a party from continuing to hold office when it was finally decided he was not entitled to it, and it makes no difference whether he is the contestant or contestee.

Whether the contestant or contestee is elected to office, the judgment of ouster would deprive the one elected of the office, but it would not put the other party in office. The statute itself provides that when the judgment operates as an ouster, there will be a vacancy which must be filled according to law.

Appellee also calls attention to and relies on *Cain* v. *CarlLee,* 169 Ark. 887, 277 S. W. 551, but the court in that

case said, quoting from *Ferguson* v. *Montgomery, supra*: "The object was to prevent one illegally nominated, and thereby securing an election at the general election, from holding the office during the term provided by law, or a material portion thereof, and thereby rendering abortive the contest proceeding. It would render the contest proceeding as abortive to permit the contestant to continue in office after the judgment finding against him as it would if he were the contestee. Whoever is placed on the ticket by the election commissioners in obedience to the certificate of nomination or in obedience to an order of the court is the nominee of the party, and, if it is finally determined that he was not entitled to the nomination, the judgment of the court operates as an ouster.

The appellant contends that the pleadings filed by the contestant were not sufficient upon which to base a contest of an election.

The case of *Hill* v. *Williams*, 165 Ark. 421, 264 S. W. 964, is cited in support of appellant's contention. The court however, in that case, said: "Suffice it to say that it (complaint) contained many allegations of irregularities and fraud in general terms, partaking of the nature of conclusions."

A demurrer was interposed to this complaint and sustained by the circuit court, and this court said: "It was incumbent upon the appellant to allege facts and not conclusions which would disclose, if true, that he received a plurality of all the votes cast for sheriff and collector in said county. The allegation that certain votes were cast for and accredited to one of the three opponents, would not of itself show that he received the highest number of votes in the election for said office. There should have been an allegation in the complaint showing the number of votes received by each candidate, so that it would appear, after deducting the alleged fraudulent votes from the number accredited to appellee, that appellant would then have more votes than either one of

his opponents." *Hill* v. *Williams,* 165 Ark. 421, 264 S. W. 964.

The allegation that the court said the appellant should have made in the Hill case was made in the instant case.

This court has said that the statute providing for contesting elections should be liberally construed. The purpose of the contest is to determine what candidate received the greatest number of votes.

The pleadings, in an election contest case, should be sufficiently specific to give reasonable information as to the grounds of contest. The statute provides that the contest shall be begun in a certain number of days, and this court has held that, after the time for filing a contest has expired, the contestant cannot so amend his complaint or petition as to set forth any new cause of action. He can, however, even after the time has expired, amend his complaint by making it more definite and certain as to any charge in his original complaint, and if a motion to make it more specific is filed, it would be his duty to make the amendment.

He cannot, however, amend after the time expires by alleging a cause for contest not mentioned in his original complaint.

"Since such contest is generally held not to be a civil action subject to the rules of pleading in actions at law, but to be a special statutory proceeding, varying in its nature as well as in the sufficiency of the pleadings, according to the statutes of the different States, the same strict technical accuracy in pleading is not usually required as in civil action *inter partes.*" 20 C. J. 225.

"But it is not essential that the contestant set forth the grounds of his contest with the precision required of a pleading in a civil action, certainty to a common intent being all that is generally required, and technical objections will be disregarded. The petition or complaint must apprise the contestee of the particular facts relied upon as invalidating his election and general

charges of fraud, mistake, intimidation, etc., will be disregarded unless the alleged acts relied on are set out in detail.'' 20 C. J. 227-8.

"It is impossible to state with precision the rule with regard to amendments of the pleadings. Much must be left to the discretion of the court, or the very object of the statute will be defeated. On the other hand, the contestant should not be allowed to make amendments which would necessarily unduly delay the trial of the contest, and on the other hand he should be allowed to make amendments in all cases where no such delay would result and where the amendment was made for the purpose of presenting the issues with due diligence. * * * The rule must not be so strict as to afford protection to fraud by which the will of the people is set at naught, nor so loose as to permit the acts of sworn officers chosen by the people to be inquired into without an adequate and well-defined cause.'' *Bland* v. *Benton*, 171 Ark. 805, 286 S. W. 976; *Gower* v. *Johnson*, 173 Ark. 120, 292 S. W. 382.

The former decisions of this court are practically unanimous in holding that the original pleading must state a *prima facie* case and must be filed within the time allowed by law, and that no amendment will be allowed which states a new and different cause of action, but that amendments will be allowed at any time that simply make more specific the statement of the cause of action in the original complaint.

It is next contended by the appellant that the court, having found from the testimony that the printed list of electors furnished to the judges and clerks holding the election had not been compiled and printed in compliance with the statute, the contest should have been dismissed, and they cite and rely on *Brown* v. *Nisler*, 179 Ark. 178, 15 S. W. (2d) 314.

In that case the court said, speaking of the contestant: "He is contesting appellee's right to the nomination, and claims that he received a majority of the

legal votes, but he bases his contest almost entirely on the printed list, and since, as we have already shown, the printed list was invalid, not having been compiled in substantial compliance with the provisions of the statute, his contest must necessarily fail, and the circuit court was correct in dismissing his complaint.''

The contest in the case at bar is not based either entirely or almost entirely on the printed list. Appellee stated in his complaint that many illegal ballots were cast and counted for appellant, and that certain votes cast for appellee were not counted; that in precinct C of the 8th Ward 10 ballots which were unsigned by the voters and not counted by the judges were cast for appellee; that 10 persons living outside of the city limits voted in precinct C of the 8th Ward for the appellant.

There is a number of other allegations in plaintiff's complaint besides the allegations based on the printed list. It is alleged, however, that these allegations are not definite, and the testimony was objected to by appellant on that ground, and the court held that the only testimony that could be admitted would be that to substantiate the specific charges made in the complaint and sustained appellant's objection.

The court also held that he could not treat the complaint as amended to conform to the proof because the amendment would have to have been filed within 10 days. That, of course, is true as to any new cause of contest.

The next contention of the appellant is that the court erred in permitting testimony on the part of the appellee after the appellant had rested his case. The manner of the introduction of testimony is very largely in the discretion of the trial court, and, as we have already said, the purpose of the statute authorizing contest is to determine which candidate received the greatest number of votes, and the statute should be liberally construed so as to accomplish its purpose. Of course, no injustice should be done to the contestee, and he should be given an opportunity to fully develop his case, and the

procedure should be such as to enable the court to determine who had received the greatest number of votes, and this should be brought about without injustice being done either party.

If the evidence offered was competent and did not result in any prejudice or injustice to the appellant, it was not error for the court to permit it, and it was proper to permit the appellee to show that persons voted illegally whether their names were on the certified list or not.

This court has said in speaking of the ruling of the trial court as to the introduction of evidence: "There was no error in this ruling, as trial courts are vested with a very large discretion in determining the orderly course of the trial, and this court will not reverse therefor except for manifest abuse of such discretion." *Taaffe* v. *Sanderson,* 173 Ark. 970, 294 S. W. 74.

The court also said: "Furthermore this court seems to have recognized the correctness of this procedure in the case of *Bland* v. *Benton,* 171 Ark. 805, 285 S. W. 380."

Appellant next urges a reversal because the court held that certain votes for appellee were legal and counted same for him. It is argued that they should not have been counted at all for appellee, because he had alleged that these votes were illegal, but that allegation was made when it was thought that the list was compiled according to law, and the names of these voters did not appear on the printed list, and it is insisted that the pleadings make these 13 votes in controversy illegal. These votes were legal, and no error was committed in counting them.

The appellant says that the court erred in refusing to count as legal ballots for contestee certain ballots which disappeared from certain boxes, with attached maiden affidavits which had been placed in the boxes accompanying the ballots.

The appellant argues that the proof is conclusive and uncontradicted, that the affidavits disappeared and were not with the ballots, and that all these ballots, with the exception of Mrs. Hum, were cast for the contestee. The appellant, however, does not call our attention to the evidence on this question, but the evidence in the transcript shows that the attorney for the appellant stated he was not going to consent to appointment of a committee and that he did not think the ballots ought to be inquired into; that the returns of the election are *prima facie* valid.

The committee appointed by the court reported and the list of maiden votes was introduced, accompanied by the affidavits, the list showing for whom the party voted.

It would make the opinion entirely too long, and it would serve no useful purpose to call attention to each ballot or each voter and comment on the separate rulings of the court. We have examined very carefully the entire abstract of the evidence and the rulings of the court, and have reached the conclusion that the court correctly declared the law under which it held votes legal or illegal, and, even if there is any doubt about the ruling of the court on the legality or illegality of any votes, the ruling applied to the contestant as well as the contestee. The record clearly shows that the ruling of the trial court on all these questions was fair and impartial, manifesting a desire and intention to ascertain which candidate received the most legal votes in the primary election.

While we have not discussed each particular ballot and objections made to each one, we have very carefully considered the entire evidence and all the objections raised and have reached the conclusion that both parties had a fair and impartial trial, and that no reversible error was committed by the trial court.

The judgment of the circuit court is affirmed.