TRUSSELL *v.* FISH.

4-6411                                          154 S. W. 2d 587

Opinion delivered October 13, 1941.

A. J. Johnson, James H. Nobles, Jr., and J. R. Wilson, for appellant.

E. W. Brockman, for appellee.

GRIFFIN SMITH, C. J. In the democratic primary election of 1940 in Lincoln county, W. A. Trussell, upon the face of returns, received 758 votes for the office of county judge. His opponent, W. A. Fish, received 729. Fish contested, alleging that if illegal ballots cast for Trussell were deducted the result would be reversed.

Rules of the party were pleaded, including the provision that a challenge may be sustained to the vote or ballot of anyone who, within two years preceding any primary, had wilfully refused to support the nominee in a general election, or who by word or action had espoused the cause of any but democratic nominees.

Application of the rule was invoked in respect of transactions relating to the 1938 general election, wherein J. G. Tucker, an independent candidate, sought the office of county judge in opposition to W. A. Fish, the latter having been selected as the democratic nominee. Tucker's name was placed on the ballot in response to a petition signed by 78 persons, 59 of whom participated in the primary election.

Many other charges of irregularities were made: that republicans and persons holding illegal poll tax receipts voted; that persons rendered infamous through convictions of crimes whose citizenship had not been restored were participants; that gift poll tax receipts were held by those who supported Trussell; that persons who would not be 21 years of age at the succeeding general election were not excluded, and that additional illegalities accounted for the apparent majority received by appellant.

Trial began September 19, 1940, and continued until October 18. The court found that 331 illegal votes had been cast for Trussell and 208 for Fish, and that Fish had been nominated by a majority of 94 votes.

One of appellant's contentions is that the court erred in not excluding 390 votes cast for Fish as to which there was no evidence of the electors' qualifications other than the printed list supplied election officers, upon which the names appeared.

Section 4696, Pope's Digest,[1] directs the county collector to file with the county clerk a list containing the names of all persons who, within the time prescribed, have paid the poll tax assessed against them. It is then provided: "The correctness of this list shall be authenticated by the affidavit of the collector in person." This list is transmitted to the county clerk, who in turn delivers a verified copy to the county election commissioners. The list is printed and distributed with the ballots and blank poll books.

The list of voters questioned by appellant was certified by the collector. It was then delivered to the county clerk, who certified a copy to the election commissioners, and the commissioners caused the list to be printed in pamphlet form. It is conceded, however, that the collector did not attach his affidavit to the list, although he testified this was a mere oversight; that he "made" the record and delivered it to the clerk; that his signature was attached for the purpose of evidencing belief in accuracy of the work, and ". . . when I signed . . . it looked to me like that was guaranteeing the list."

*First.*—The trial court held that what the collector did was in substantial compliance with the law. To this view we assent. In support of appellant's argument it may be said that there is language in some of the opinions which seemingly supports the contention that the list was void. Appellant does not insist that after making proof of the collector's failure to affix his affidavit no verity attached to the list. His position is that it then devolved

---

[1] This section of Pope's Digest formerly appeared as § 3740 of Crawford & Moses' Digest. The explanation is necessary because reference in former opinions of this court (written prior to publication of Pope's Digest) are to the Crawford & Moses sections.

upon the party questioning ballots accepted by election officers to show, as a prerequisite to validity of such ballot, that the voter filed with judges of election an original poll tax receipt or a certified copy,[2] or in other respects complied with statutory provisions.

An election judge from each voting precinct testified that the printed list was relied upon in respect of names it contained, and that no other evidence of qualification was required except in a few instances. Of ballots cast for appellee, 390 were examined for the purpose of showing that neither a poll tax receipt nor certified copy was attached, and that separate lists of such voters were not returned by the election officials.

The first case argued by appellant (to sustain his contention that even if, *prima facie,* verity attached to the returns made by election officials, such verity must necessarily give way to proof that other mandatory requirements of § 4696 of Pope's Digest were not complied with) is *Morrow* v. *Strait,* 186 Ark. 384, 53 S. W. 2d 857. In that case the complaint alleged illegality of votes "Because there was no certified, authenticated, sworn list of qualified electors filed with the county clerk by the collector."

The opinion quotes from *Cain* v. *McGregor,* 182 Ark. 633, 32 S. W. 2d 319, where in respect of § 3740 of Crawford & Moses' Digest, it was said: "The whole proceeding is statutory, and the statute must be substantially followed in all proceedings." It was further said in the Morrow-Strait case that there is a presumption that the election was conducted according to law. There is the statement that ". . . we have never held . . . that an election was illegal and void where the collector had not filed with the county clerk an authenticated list of the names of persons who had paid their poll tax." There is reference to *Brown* v. *Nisler,* 179 Ark. 178, 15 S. W. 2d 314, where it was said that the provisions of § 3740 of C. & M. Digest ". . . are the positive requirements of the law," and "The effect of not substantially complying with the law with regard to the preparation and publication of the printed list of voters

---

[2] Pope's Digest, § 4745.

was to nullify the list and leave the same condition as if no list had been printed at all.''

The Brown-Nisler case is distinguishable from the instant appeal in that here the collector prepared the list and certified it as authentic, neglecting only the statutory requirement of an affidavit. In the Brown-Nisler controversy the collector did not prepare a list, that function having been performed by the county clerk, who then delivered it to a printer. Hence, no verity could attach to a list that had no legal existence. In the case at bar the collector's certificate is attached to the poll lists, as is that of the county clerk. These lists went to the election officers who, no doubt, did not know of the law's requirement that the collector certify and swear to them. The statute does not require that the collector's affidavit be printed on the list made from the county clerk's certified copy, and there was nothing to put election officials upon notice that the list was not completely authenticated.[3]

It is our view that, although it is mandatory before an election has been held that the collector attach his affidavit to the poll tax list, and compliance with the statute may be enforced, yet a failure to make the affidavit discovered after the list has been certified under the collector's oath of office does not have the effect of putting election officers on notice that in order to have a valid election they must require each person who offers to vote (whose name is on the list certified by the county clerk) to deposit his or her poll tax receipt or a certified copy.

In a contest it may be shown that persons on the list are ineligible to vote, and errors may be so numerous as to overcome the presumption of verity that attaches to the list, (*Wilson* v. *Luck*, 201 Ark. 594, 146 S. W. 2d 696) but presumptive verity of the list continues, even without the collector's affidavit, until something more than

---

[3] See *Darmer* v. *White*, 182 Ark. 638, 32 S. W. 2d 625; *Tucker* v. *Moroney*, 182 Ark. 681, 32 S. W. 2d 631; *McLain* v. *Fish*, 159 Ark. 199, 251 S. W. 686; *Craig* v. *Sims*, 160 Ark. 269, 255 S. W. 1; *Parrish* v. *Nelson*, 186 Ark. 1118, 57 S. W. 2d 1037; *Henderson* v. *Gladish*, 198 Ark. 217, 128 S. W. 257; *Taaffe* v. *Sanderson*, 173 Ark. 970, 294 S. W. 74; *Wilson* v. *Luck*, 201 Ark. 594, 146 S. W. 2d 696; *Horn* v. *Fish*, 198 Ark. 79, 127 S. W. 2d 623.

failure to make the oath has been shown. Such failure, in the circumstances reflected by the case at bar, is not indicative of fraud.

In most of the cases where effect of the collector's failure to make the affidavit is discussed (see third footnote) it is said that there must be *substantial* compliance with the statute, and to this rule we adhere. The question is, What *is* substantial compliance? and it follows that proof in a particular case regarding intent and effect must first be considered before an answer can be formulated.

There would be a subversion of purpose and a sacrifice of popular will if we should say that in a primary election the unintentional failure of a ministerial officer to perform strictly all functions which are made mandatory with respect to verification of poll tax lists, continues to be imperative after the lists, unaffected by fraud, and substantially correct in all other essentials, have performed the service intended by the legislative authority.

*Second.*—Appellant urges that delinquent assessments were invalid because R. W. Eastham was not a qualified elector and his appointment as deputy collector was illegal. Attention is directed to Act 172 of 1929, vol. 2, and to § 4693 of Pope's Digest. It is contended that, although Act 82 of 1939, § 2, extends the time for payment of taxes, it does not extend the time for making assessments upon which a poll tax entitling one to vote may be procured; also, that the poll tax books for 1938 did not contain the affidavit required by law, ". . . nor did it contain any affidavit at all made by the assessor to the correctness of the personal poll tax list, as required by § 18 of Act 172 of the Acts of 1929, now Pope's Digest, § 13679."

The flaw urged against assessments made by Eastham as deputy is that he did not hold a 1937 poll tax receipt in Lincoln county, and that he made his own assessment for 1938, September 26, 1939. There was no order of the county court approving the deputy's appointment.

April 10, 1939, O. L. Guffey, assessor, designated Eastham as deputy. The oath of office was taken the same day. Authentication of the appointment and oath were promptly filed with the county clerk. Eastham had been a resident of Union county and had not been in Lincoln county six months at the time he assumed office as a deputy. Section 3 of Art. 19, constitution of Arkansas, prohibits the election or appointment of anyone to office who does not possess the qualifications of an elector. An assessor is a constitutional officer.[4]

No statute has been called to our attention declaring void the work of a deputy assessor who was not at the time his duties were being discharged a qualified elector and whose appointment had not been approved by the county court; nor do we know of any such provision of law. If it should be conceded that Eastham was not an officer *de jure,* still his acts would be valid under the rule that one appointed by an officer or agency having authority to make the appointment has improperly or ineffectively exercised the power. In such circumstance the appointee is a *de facto* officer. *Matthews* v. *Bailey,* 198 Ark. 830, 131 S. W. 2d 425. Although it was held in the Matthews case that the acts of a state senator appointed by the governor were void, that conclusion was predicated upon the fact that the governor had no actual or apparent authority to make the appointment. In the instant case the assessor was clothed with appointive power. The fact that he proceeded irregularly, or that he appointed a man who was not eligible, cannot deprive voters of their franchise.

The trial court held that the Act of 1929 not only meant that the assessor had authority to make delinquent poll tax assessments before his records were delivered to the county clerk, but that delinquent assessments might be made by the assessor after such delivery "and before the collector closes his books."

Evidence touching methods used by the assessor and county clerk is to the effect that the delinquent appeared before the assessor and was assessed; that the assessor

---

[4] Constitution, Art. VII, § 46. See *White* v. *McHughes,* 97 Ark. 221, 133 S. W. 1026; *White* v. *Reagan,* 25 Ark. 622.

transmitted lists to the county clerk, and that the clerk personally entered the names on the tax books.[5]

In *Tucker* v. *Meroney,* 182 Ark. 681, 32 S. W. 2d 631, the contention was that votes cast at the election were illegal because the poll tax payer had been assessed since the regular assessing time, by the assessor, under the provisions of Act 172 of 1929, insistence being that the voters should have proceeded under § 3738 of Crawford & Moses' Digest (now § 4693 of Pope's Digest) [6] by applying to the county clerk to have their names included in the list of voters [certified by the collector] as additions of omitted names. The opinion, written by Chief Justice HART, held that the appellant could not prevail for two reasons. "If it should be held," he said, "that [Act 172 of 1929] is inconsistent with and repugnant to § 3738 of the Digest, then § 3738 is repealed by implication and the 203 votes are illegal because the names were added by the compliance of the assessor with the provisions of said Act 172. . . . If it be said that the provisions of Act 172 are not inconsistent with or repugnant to the provisions of § 3738 of the Digest, then both provisions stand and are supplementary to each other. Two methods would be provided for placing the names of the voters, omitted by the assessor in his regular period of time for assessing persons and property on the list to be authenticated by the collector under the provisions of § 3740 of [C. & M.] Digest. . . ."

It will be observed that the opinion does not hold that § 3738 of Crawford & Moses' Digest was repealed.

In *Morrow* v. *Strait,* 186 Ark. 384, 53 S. W. 2d 857, there is comment on § 3740 of Crawford & Moses' Digest, and reference to Act 152 of 1931, which amended § 3740. It is said that title to the Act indicated an intention by the general assembly to extend the time ". . . not for paying taxes, but for certifying the list of those who had paid." It was then held that the body of the Act did not conform to the expression of legislative intent. The following is quoted from the opinion:

[5] There were unimportant exceptions, not affecting the result.
[6] But see Act 37, approved February 13, 1941.

"The language of the Act of 1931 . . . says so plainly—that we cannot hold otherwise—that the collector's certificate shall include the names of all persons 'who have up to and including that date paid the poll tax assessed against them respectively.' The date referred to is, of course, the third Monday in July, this being the only date to which reference is made."

There was the further holding that, inasmuch as Act 152 contained no reference to the time within which persons may assess for taxes, ". . . the law in that respect remains unchanged." There is this sentence in the opinion: "The collector could not therefore issue a poll tax receipt which would qualify one to vote who had not been assessed prior to the Saturday preceding the first Monday in July, as no provision was made for extending the time for assessing, the only provision being for the payment of taxes by persons already assessed."

There is a declaration in *Collins* v. *Jones,* 186 Ark. 442, 54 S. W. 2d 400, that *"Tucker* v. *Meroney, supra,* declares the law to be that one may have his name placed on the tax books through an assessment made pursuant to Act 172 [of 1929], or by the clerk, pursuant to § 3738, Crawford & Moses' Digest, but the implication is very clear in that case that the assessment must be made in one way or the other before the collector has the authority to issue a poll tax receipt, and that, unless authorized, the receipt does not qualify the taxpayer as an elector."

In the same opinion it is also said: "Now, while one must assess his personal property and his poll tax, either through the assessor in person or by agent, or through the county clerk in the manner above stated, to be entitled to pay his poll tax, he does not have to pay other taxes. . . ."

In *Cain* v. *CarlLee,* 168 Ark. 64, 269 S. W. 57, it was said: "Section 3738, C. & M. Digest,[7] provides how omitted names may be added to the tax books. These names can be added only by the county clerk." The opinion was written in 1925.

The Morrow-Strait case dealt with a situation where the general assembly (Act 152 of 1931) advanced from

---

[7] Pope's Digest, § 4693.

the first Monday in July to the third Monday in July the time within which the collector should file with the clerk a list of those who had paid poll taxes. By § 1 of Act 82, approved February 15, 1939, collectors are allowed until October 15 to file the list of poll tax payers, although payment of such taxes is restricted to October 1, midnight.

The most perplexing question for decision is whether delinquent poll tax *assessments* are to be made by the assessor, the county clerk, or by either; and, if assessable by either, at what time does the clerk's right to act accrue, and when does it end with respect to either?

The Collins-Jones case (decided November 7, 1932) is the last expression relating to the rights of county clerks and assessors to make delinquent assessments. We adhere to it.

Although we held in the Morrow-Strait case that the Act there considered did not extend the time for making delinquent assessments,[8] the general plan of tax payments has been completely changed since the statutes of 1931 and 1929 were construed. The policy has been one of greater indulgence in so far as time is concerned, and since approval of Act 16, August 25, 1933, property taxes have been dischargeable in installments. It appears, therefore, that this design of liberality carries with it a clear implication that delinquent poll tax assessments are permissible until payment conflicts with collection.

Section 13676 of Pope's Digest requires the assessor to file with the county clerk, on or before the third Monday in August, ". . . his report of assessment of all personal property and persons." This section is a part of Act 172 of 1929 and was in force when the Morrow-Strait decision held that the time for making delinquent poll tax assessments before the clerk had not been extended.

Prior to 1939 the last day for *payment* of a poll tax was June 15. Act 144, approved March 24, 1933, amended § 3740 of Crawford & Moses' Digest (Pope's Digest, § 4696) by restricting the time for paying poll taxes from the first Monday in July to June 15. The same provision

---

[8] The opinion was handed down October 31, 1932.

was included in Act 123, approved March 19, 1935. Act 82 of 1939 made the next change, amending §§ 4696, 4697, and 4699 of Pope's Digest. Section 2 of Act 82 amended § 4697 of Pope's Digest by fixing the time for collecting poll taxes as "the period between the third Monday in February and the first day in October." The clerk turns his books over to the collector the third Monday in February.

After Act 82 became effective, those holding a poll tax paid prior to midnight, October 1, under a valid assessment, had the right to vote at any election held prior to October 1 of the following year, if otherwise qualified. But both before and after 1939 poll taxes became delinquent for assessment, as did property, on April 10. In the case of payments made in 1939, assessments were delinquent after April 10, 1938.

As a matter of practice there are but few assessments made between the third Monday in August (when the assessor turns his books over to the clerk) and the third Monday in February. Since the clerk does not receive the assessor's books until the third Monday in August he does not know (unless informed by the party proposing to assess) whether such person has been included in the assessor's assessment; hence, there is no reason to assume that the general assembly intended to confer upon clerks the right to make delinquent assessments prior to the third Monday in August.

There is an implication in § 4693 of Pope's Digest (Act 2, May 31, 1909, § 1, p. 942) that at that time it was not intended that the clerk's right to make delinquent assessments should accrue until the assessor's books had been delivered. It says: "At any time after the assessment lists have been delivered to the county clerk for the purpose of enabling him to prepare the tax books for the collector, any person whose name has for any cause been omitted from the said lists may have his name included in said list and placed upon the tax lists in the hands of the collector by application to the said clerk. . . ."

The various Acts and decisions cannot be entirely harmonized. There are obvious omissions from statutes as a result of which the expressed effect of the enact-

ments cannot be realized without imputing an intent. We cannot read from the Acts liberalizing tax payments in general any aim other than one to permit assessments to be made until the time for paying taxes ends at midnight, October 1. It follows that our holding is that persons assessed as the record in the instant case discloses came within the law's intent.

*Third.*—Error is alleged to have resulted from the trial court's action in permitting ballots cast in the 1938 general election to be examined at the instance of appellee for the purpose of proving how those who signed the Tucker petition voted. Appellant, without objection, had previously produced some of the ballots selected from different voting precincts. There was no charge, nor even the suggestion, that the ballots had not been properly preserved, or that there was want of integrity. Objection was on the ground that ballots cast in 1938 were ''dead'' in 1940; that they were confidential to the voters who cast them until called for in a timely manner for judicial inspection in consequence of a contest, and that the voter's right of privacy had not been waived.

We think the court properly admitted the evidence. It was primary; in fact, it was the *best* evidence, and although the statute relating to preservation of ballots contemplates that they shall be inviolate, and that they shall be inspected only as the law directs, they were not closed to the court in a proceeding wherein the facts they might reveal were indispensable to an adjudication of rights.

*Fourth.*—Under this subdivision of appellant's brief there is argument that the ballots cast for Tucker and challenged by appellee were not legal ballots, ''. . . since they had been declared void by the Lincoln circuit court and by the Supreme Court in the case of *Horn* v. *Fish;* that the persons whose ballots were illegal in the primary election . . . in 1938 were necessarily void in the general election of 1938.'' Argument is that such of these ballots as were cast for Tucker in the general election should not be counted and charged against the appellant, ''. . . as said ballots of said persons could

not have been legally counted in the general election of 1938.''

A sufficient answer to this objection is that there is no testimony relating to particular votes illegally cast in the 1938 primary.

*Fifth.*—There are miscellaneous assignments, and arguments supporting disputes relating to individual votes and to relatively small groups of votes. These do not determine the result, and therefore are not discussed. The briefs do not contain tabulations showing what the results would have been if all, or only a part, of the miscellaneous votes in controversy had been placed in one or the other column.

*Sixth.*—Without passing on merits of secondary disputes that cannot affect the final result, we hold, (1) that the trial court had jurisdiction; (2) that it did not err in declining to exclude 390 ballots as to which no further evidence of the voter's eligibility was shown than the printed poll list; (3) that under party rules which may be enforced those who voted for Tucker in the general election were not entitled to participate in the 1940 democratic primary;[9] (4) that delinquent assessments made by the assessor, and those made by the clerk subsequent to the third Monday in August[10] were valid in so far as the right of either officer to make the assessment was an issue; (5) that the assessor's affidavit to an assessment was not a prerequisite to validity of the vote cast in pursuance of such assessment; (6) that the deputy assessor, Eastham, was a *de facto* officer, and (7) that it was not improper to examine ballots cast in the 1938 general election.

Judgment affirmed.

---

[9] We have not overlooked § 20 of Act 123, approved March 19, 1935, which does not abrogate the party rule.

[10] The primary was held August 27, 1940; therefore all assessments were prior to midnight, October 1.